UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JULIO ENRIQUE MERCADO,

        Petitioner,

v.

SHIRLEE HARRY,

        Respondent.

_____/

Case No. 1:17-cv-989

Honorable Paul L. Maloney

## **OPINION**

        This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, RULES GOVERNING § 2254 CASES; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court will dismiss Petitioner's habeas petition.

## Discussion

### I. Factual allegations

Petitioner Julio Enrique Mercado is incarcerated with the Michigan Department of Corrections at the Earnest C. Brooks Correctional Facility, (LRF) in Muskegon Heights, Michigan. On March 15, 2013, a Kent County Circuit Court jury, found Petitioner guilty of two counts of armed robbery, MICH. COMP. LAWS § 750.529, one count of conspiracy to commit armed robbery, MICH. COMP. LAWS § 750.157a, one count of assault with intent to rob while armed, MICH. COMP. LAWS § 750.89, and one count of possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b. On April 16, 2013, the court sentenced Petitioner as a habitual offender-third offense, MICH. COMP. LAWS § 769.11, to two years' imprisonment for the felony-firearm conviction, consecutive to four concurrent sentences of 25 to 50 years for each of the remaining convictions.

With the assistance of appointed counsel, Petitioner appealed his convictions and sentences to the Michigan Court of Appeals. Petitioner filed one brief through counsel and one supplemental Standard 4 brief.[1] Petitioner raised several issues, including the single issue he raises in his habeas petition: Petitioner's conspiracy conviction violates due process because it is not supported by sufficient evidence. (Pet., ECF No.1, PageID.2.) The court of appeals affirmed the trial court by opinion issued October 28, 2014.

Petitioner then filed a pro per application for leave to appeal in the Michigan Supreme Court raising the same issues he had raised in the Michigan Court of Appeals. That court denied leave by order entered May 28, 2015.

---

[1] Standard 4 permits an appellant to file a brief *in propria persona* covering issues the appellant wants to raise on appeal even though his counsel does not. Mich. Admin. Order No. 2004-6.

On October 9, 2015, Petitioner filed a motion for relief from judgment in the trial court raising a Confrontation Clause challenge to the admission of an out-of-court statement and seeking resentencing under *People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015), a case decided on July 29, 2015. The trial court denied relief by opinion and order entered October 26, 2015. With respect to the *Lockridge* issue, the court stated:

> [T]his Court would have imposed the same sentence even in the absence of the unconstitutional constraint found invalid in *Lockridge*. After witnessing the trial and hearing arguments regarding sentencing, the Court considered the guidelines and determined what would be a reasonable and appropriate sentence in light of the circumstances. Even if the guidelines were not mandatory at that time, this valid sentence would not have changed.

*People v. Mercado*, No. 12-08826-FC (Kent Cty. Cir. Ct. Oct. 26, 2015).[2] Petitioner filed applications for leave to appeal in the Michigan Court of Appeals and the Michigan Supreme Court. Those courts denied leave by orders entered April 11, and December 28, 2016, respectively.

Petitioner's convictions were based upon an incident in Grand Rapids, Michigan. The Michigan Court of Appeals concisely described the underlying facts as follows:

> [Petitioner] and three males approached Wilmar Lima-Pelaez and Xavier Pagan while they were walking down Division Street in Grand Rapids. [Petitioner] pointed a gun at Lima-Pelaez and demanded that he hand over money. Lima-Pelaez removed $100 from his wallet, and [Petitioner] took the money. While [Petitioner] was taking Lima-Pelaez's money, the other three males were attacking Pagan. Miguel Aguilar-Jimenez, a friend of Lima-Pelaez and Pagan, walked up to the scene and saw [Petitioner] and the other males demanding money from Pagan. [Petitioner] threatened to kill Lima-Pelaez if Aguilar-Jimenez and Pagan refused to give him more money. [Petitioner] pointed his gun at Aguilar-Jimenez, and Aguilar-Jimenez handed his wallet to [Petitioner], who took $20. [Petitioner] dropped his gun, and the three other males ran after the gun. [Petitioner] recovered the gun and pistol-whipped Aguilar-Jimenez. [Petitioner] and the other males thereafter ran away from the scene.

*People v. Mercado*, No. 315152, 2014 WL 5464948, at *1 (Mich. Ct. App. Oct. 28, 2014).

---

[2] On December 21, 2015, Petitioner filed a habeas petition in this Court raising the same issue he raises in this case and an ineffective assistance of counsel claim. The petition was dismissed for failure to exhaust available state court remedies. *Mercado v. Palmer*, No. 1:15-cv-1320 (W.D. Mich.) (Op. & Ord., ECF Nos. 11, 12.)

## II. AEDPA standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655. Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

### III. Concurrent sentencing doctrine

The "concurrent sentencing doctrine" invests the court with discretion to decline to hear a substantive challenge to a conviction when the sentence on the challenged conviction is being served concurrently with an equal or longer sentence on a valid conviction. *See United States v. Hughes*, 964 F.2d 536, 541 (6th Cir. 1992); *Dale v. Haeberlin*, 878 F.2d 930, 935 n.3 (6th

Cir. 1989). The doctrine has its origins in appellate practice applicable to direct review of criminal cases. *See Benton v. Maryland*, 395 U.S. 784, 788-91 (1969); *Hirabayashi v. United States*, 320 U.S. 81 (1943). In these cases, the Supreme Court and the Sixth Circuit have declined to review convictions on one count where the presence of a valid concurrent count is sufficient to retain the defendant in custody. *See, e.g., Hirabayashi*, 320 U.S. at 105; *United States v. Burkhart*, 529 F.2d 168, 169 (6th Cir. 1976). The standard guiding the court's discretion is whether there is any possibility of an adverse "collateral consequence" if the conviction is allowed to stand. *See Hughes*, 964 F.2d at 541; *Dale*, 878 F.2d at 935 n.3; *see also United States v. Byrd*, No. 89-6448, 1990 WL 116538, at *3 (6th Cir. Aug. 13, 1990).

Although the doctrine has its roots in direct appeals, the federal courts apply it in habeas corpus actions, citing the futility of reviewing a conviction that will not result in a petitioner's release from custody. *See, e.g., Cranmer v. Chapleau*, No. 95-6508, 1996 WL 465025 (6th Cir. Aug. 13, 1996); *Scott v. Louisiana*, 934 F.2d 631, 635 (5th Cir. 1991); *Williams v. Maggio*, 714 F.2d 554 (5th Cir. 1983); *VanGeldern v. Field*, 498 F.2d 400, 403 (9th Cir. 1974). In habeas actions, as in direct review, the exercise of the court's discretion depends upon the degree of prejudice that may be attributed to the challenged conviction and, specifically, the effect of any adverse collateral consequence if the conviction is allowed to stand. *Williams*, 714 F.2d at 555.

The present case is appropriate for application of the concurrent sentencing doctrine. Petitioner is serving concurrent terms 25 to 50 years for his convictions on two counts of armed robbery, one count of assault with intent to rob while armed, and one count of conspiracy to commit armed robbery. The present petition challenges only the conspiracy conviction. Thus, even if the court were to vacate the conspiracy conviction, the maximum relief available would be invalidation of that sentence, still leaving Petitioner with 25 to 50 year sentences on his other

convictions. Accordingly, release from prison would not be available even if the conspiracy conviction challenged in this petition were vacated.

Perhaps in recognition of that problem, Petitioner has attempted to describe a collateral consequence that might foreclose application of the concurrent sentencing doctrine. Petitioner contends that if the conspiracy conviction were vacated, it would require that Petitioner's sentences on his other convictions be recalculated and the range of permissible minimum sentences would change. The consequence offered by Petitioner is based on two premises: (1) only jury-found facts can be relied upon in scoring Petitioner's sentence under the Michigan Sentencing Guidelines; and (2) the conviction for conspiracy supplies the only evidence that might support the court's scoring of ten points on offense variable 14 regarding Petitioner's role as a leader. Neither premise is correct.

In *Lockridge*, the Michigan Supreme Court held that the Michigan sentencing guidelines set a mandatory minimum sentence and, under *Alleyne v. United States*, 570 U.S. __, 133 S. Ct. 2151 (2013), a sentence imposed under the mandatory guidelines would violate the Sixth Amendment right to a trial by jury if the sentence were based on facts other than facts admitted by the defendant or found by a jury beyond a reasonable doubt. *Lockridge*, 870 N.W.2d at 519. The *Lockridge* court concluded that it could remedy the constitutional infirmity by making the guidelines discretionary. *Id.* at 520-521. That remedy addressed the problem prospectively. After July 29, 2015, the date of the *Lockridge* decision, sentencing courts would be aware that the court could set the minimum sentence in its discretion. The question was more difficult for sentences imposed before that date, such as Petitioner's sentence.

The Michigan courts concluded that *Lockridge* established a new rule for the conduct of criminal prosecutions grounded in the United States Constitution and, therefore, was

7

properly applied retroactively to all cases pending on direct review or not yet final. *People v. Richards*, 891 N.W.2d 911, 924-25 (Mich. Ct. App. 2016). "A state conviction and sentence become final for purposes of retroactivity analysis when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for a writ of certiorari has elapsed or a timely filed petition has been finally denied." *Caspari v. Bohlen*, 510 U.S. 383, 390 (1994) (citing *Griffith v. Kentucky*, 479 U.S. 314, 321 n.6 (1987)).

The Michigan Supreme Court denied Petitioner's application for leave to appeal on May 28, 2015. His conviction became final 90 days thereafter, when the time for filing a petition for writ of certiorari has elapsed. Thus, *Lockridge* applies to Petitioner's sentence.

The *Lockridge* court recognized that not every defendant whose sentence was retroactively subject to *Lockridge* would be entitled to relief. By way of example, if the sentence initially imposed represented an upward departure from the guidelines minimum range, it already represented a discretionary sentence that avoided any Constitutional infirmity. *Lockridge*, 870 N.W.2d at 522. Similarly, if the scoring of offense variables would be the same relying upon only facts admitted by the defendant or found by the jury, there would be no Sixth Amendment violation and the sentence could stand. *Id*. Unless a defendant fit into one of those two categories, however, he would be entitled to a remand. *Id*.

However, such the remand would not necessarily require a new sentence. *Id*. at 522-23. Instead under *Lockridge*, the trial court is called upon to first determine whether the court would have imposed the same sentence without the mandate. If the court would have, in the exercise of its discretion, imposed the same sentence, there would be no need for a new sentence. *Id*. If not, the court is directed to order resentencing. *Id*. at 524.

Petitioner did not return to the Michigan Supreme Court post-*Lockridge* to seek a remand. Instead, he raised the *Lockridge* issue by way of a motion for relief from judgment in the trial court. The trial court did not conclusively determine whether *Lockridge* applied or whether the scoring of Petitioner's offense variables relied upon judge-found facts. Instead, the court jumped ahead to the decision it would have faced in a *Lockridge* remand: would the court impose the same sentence if it were free to exercise its discretion?

The court answered that question in the affirmative. That answer washed away any possible taint of a Sixth Amendment violation from Petitioner's sentence. That answer also completely undercut the first premise of Petitioner's alleged consequence of the conspiracy conviction. The conviction and the jury-found facts that necessarily flow from the conviction are in no way necessary to the scoring of Petitioner's offense variables. The trial court was free to determine the facts necessary to calculate a score under the Michigan sentencing guidelines, and to do so by a preponderance of the evidence. *United States v. Louchart*, 579 F. App'x 492, 495 (6th Cir. 2014) ("[W]e have already held that the Supreme Court's decision in *Alleyne* did not change the preponderance of the evidence standard for fact finding under the sentencing guidelines."); *Lockridge*, 870 N.W.2d at 524 ("Michigan's sentencing guidelines scheme allows judges to find [facts] by a preponderance of the evidence . . . ."). Vacating the conspiracy conviction would not, as Petitioner contends, necessarily eliminate the foundation for the minimum sentence range calculation on the other convictions.

Although Petitioner's argument fails once his first premise is invalidated, it would also fail based on the invalidity of his second premise. Petitioner's suggestion that only a conspiracy can have a leader is unsupportable.

9

The proper scoring of offense variable 14 is as follows:

(1) Offense variable 14 is the offender's role. Score offense variable 14 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:

(a) The offender was a leader in a multiple offender situation-10 points

(b) The offender was not a leader in a multiple offender situation - 0 points

(2) All of the following apply to scoring offense variable 14:

(a) The entire criminal transaction should be considered when scoring this variable.

(b) If 3 or more offenders were involved, more than 1 offender may be determined to have been a leader.

MICH. COMP. LAWS § 777.44. There is no express statutory requirement that the multiple offender situation be a conspiracy. Nor has such a requirement developed in the case law. Examining cases from just this calendar year, in several cases the Michigan Court of Appeals has affirmed scoring ten points for offense variable 14 in multiple offender situations despite the absence of conspiracy charges. *See People v. Anderson*, No. 331466, 2017 WL 4699734 (Mich. Ct. App. Oct. 19, 2017); *People v. Peete*, Nos. 331568, 332006, 2017 WL 4555724 (Mich. Ct. App. Oct. 12, 2017); *People v. Hieb*, No. 332426, 2017 WL 4526776 (Mich. Ct. App. Oct. 10, 2017); *People v. Johnson*, Nos. 332043, 332296, 2017 WL 3614183 (Mich. Ct. App. Aug. 22, 2017); *People v. Dickinson*, No. 332653, 2017 WL 3495392 (Mich. Ct. App. Aug. 15, 2017); *People v. Martin*, No. 332334, 2017 WL 2263106 (Mich. Ct. App. May 23, 2017); *People v. Beach*, No. 330140, 2017 WL 1394003 (Mich. Ct. App. Apr. 18, 2017). Thus, vacating the conspiracy conviction would not preclude scoring ten points on offense variable 14.

IV. **Sufficiency of the conspiracy evidence**

Alternatively, the Court denies habeas relief on the merits. A § 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* Issues of credibility may not be reviewed by the habeas court under this standard. *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993). Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

The *Jackson v. Virginia* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "'the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan [Court of Appeals'] consideration of the trier-of-fact's verdict, as dictated by AEDPA.'" *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc) (quoting *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008)). This standard erects "a nearly insurmountable hurdle" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds. *Id.* at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

11

The Michigan Court of Appeals applied the *Jackson* standard when it rejected Petitioner's challenge to the sufficiency of the conspiracy evidence:

> Defendant first argues that the prosecutor presented insufficient evidence to support his conviction of conspiracy to commit armed robbery. In examining this issue, we review the evidence in the light most favorable to the prosecutor and determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. *People v Roper*, 286 Mich App 77, 83, 777 NW2d 483 (2009). "'Any person who conspires together with 1 or more persons to commit an offense prohibited by law, or to commit a legal act in an illegal manner is guilty of the crime of conspiracy. . . .'" *People v Mass*, 464 Mich 615, 629, 628 NW2d 540 (2001), quoting MCL 750.157a. The prosecutor must prove that the conspirators' intended future conduct included "all the elements of the substantive crime." *Mass*, 464 Mich 629 n. 19 (internal quotation marks and citation omitted). In order to establish the elements of armed robbery, a prosecutor must prove that
>
> > (1) the defendant, in the course of committing a larceny of any money or other property that may be the subject of a larceny, used force or violence against any person who was present or assaulted or put the person in fear, and (2) the defendant, in the course of committing the larceny, either possessed a dangerous weapon, possessed an article used or fashioned in a manner to lead any person present to reasonably believe that the article was a dangerous weapon, or represented orally or otherwise that he or she was in possession of a dangerous weapon. [*People v Chambers*, 277 Mich App 1, 7, 742 NW2d 610 (2007).]
>
> Viewing the evidence in the light most favorable to the prosecution, a reasonable jury could have concluded beyond a reasonable doubt that defendant and the other three males conspired to commit armed robbery. The evidence established that defendant and the three males approached Lima--Pelaez and Pagan together. Defendant demanded money from Lima--Pelaez, and when Lima--Pelaez refused, defendant pulled out a gun. While defendant took money at gunpoint from Lima--Pelaez, the other codefendants occupied Pagan by beating him. When Aguilar--Jimenez arrived, he saw defendant and the other three males demanding money from Pagan. Aguilar--Jimenez was robbed at gunpoint. After defendant dropped his gun into the street, his codefendants all went after it. After the attack, defendant and the three males all fled the scene. The circumstances, acts, and conduct of defendant and his codefendants establish that they agreed to commit an armed robbery. Circumstantial evidence together with reasonable inferences, *People v. Jolly*, 442 Mich 458, 466, 502 NW2d 177 (1993), lead to conclusions that defendant and his codefendants agreed to target the victims, approach the victims together in an intimidating manner, and employ force, violence, and threats of injury by a dangerous weapon to accomplish their criminal objective, armed robbery. Thus, viewing the evidence in the light most favorable to the prosecution,

> a reasonable jury could have concluded beyond a reasonable doubt that defendant conspired to commit armed robbery. *Chambers*, 277 Mich App at 7, 742 NW2d 610.

*People v. Mercado*, No. 315152, 2014 WL 5464948, at *1-2 (Mich. Ct. App. Oct. 28, 2014).

Petitioner's argument ignores the *Jackson* standard. Instead of viewing the evidence in a light most favorable to the prosecution, he invites the Court to view it in a light most favorable to him. Petitioner attempts to finely parse the events. Once the events are sufficiently divided, he contends the events might evidence aiding and abetting or accessory after the fact culpability on the part of the other participants, but not agreement and certainly not agreement to commit armed robbery.

Petitioner does not challenge the facts that the court of appeals concluded would support an inference of agreement to commit armed robbery. The concordant behavior among participants, as described by the court of appeals, evidences concert of action and permits an inference of conspiracy. *People v. Searcy*, No. 308101, 2014 WL 1267264, at *5 (Mich. Ct. App. Mar. 27, 2014) ("[T]he codefendants' interactions and concordant behavior was evidence of their concert of action, which created an inference of conspiracy.") Even though Petitioner does not contest those facts, he shuffles the facts a little differently, and adds a few more, to support an argument that the facts could also support the opposite conclusion. Petitioner has failed to demonstrate that the Michigan Court of Appeals' determination regarding the sufficiency of the conspiracy evidence is contrary to, or an unreasonable application of *Jackson*, the clearly established federal law regarding sufficiency of the evidence. Accordingly, Petitioner is not entitled to habeas relief.

## **Conclusion**

In light of the foregoing, the Court will dismiss Petitioner's application, following review under Rule 4, under the concurrent sentencing doctrine or, alternatively, because it fails to raise a meritorious federal claim.

### **Certificate of Appealability**

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted. *See Love v. Butler*, 952 F.2d 10 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this

Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

A Judgment and Order consistent with this Opinion will be entered.

Dated: __November 27, 2017       /s/ Paul L. Maloney
                                                                                           Paul L. Maloney
                                                                                           United States District Judge